# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 18-47** |
| **ROLAND CHAMBERS** | **SECTION I** |

## ORDER & REASONS

On April 4, 2018, defendant Roland Chambers ("Chambers") pled guilty to one count of conspiracy to distribute and possess with the intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Chambers submitted two objections to the presentence investigation report (the "PSR"). On this date, the Court sentenced Chambers based on the following resolution of the objections.

### I.

Chambers first objects to paragraph 11 of the PSR, which states:

> On August 4, 2017, a confidential source (CS) contacted the defendant on a recorded telephone call and requested a half-ounce (14.175 grams) of heroin. The CS then drove to the intersection of Myrtle and Furman Streets in Houma, Louisiana, where the CS picked up the defendant. Once inside the CS's vehicle, the defendant advised the CS that he did not have any heroin to sell the CS. The defendant advised the CS that he had two people selling heroin for him and one of the individuals had recently gotten arrested with two ounces (56.7 grams) of his product.

Chambers objects to the accuracy of this summary of the conversation he had with the confidential source. According to Chambers, although he initially told the confidential source that he had someone "serving for him," he later clarified that he

was merely selling his supply. Chambers thus objects to the PSR's statement that he told the confidential source that he had "two people selling heroin for him."

In its opposition to Chambers' objections, the government provided the Court with the specific content of the relevant conversation, which was recorded. Chambers told the confidential source, "One of my . . . people . . . , the white boy I had down here serving for me, got knocked with . . . two ounces of my shit the other day . . . . Not gonna lie, I was sick when that white boy got busted . . . . [He's] the only person . . . I really fucked with . . . him, and one other dude. Two dudes, I was selling everything to them and, boom, making my money." Chambers clearly told the confidential source that he had someone "serving for him."

Chambers omits from his objection an additional portion of the conversation. After Chambers told the confidential source that he was selling "everything" to "[t]wo dudes" and "making [his] money," the source asked him, "They were moving everything for you, huh?" to which Chambers replied, "Yeah, they were moving everything for me. Moving everything man, I hadn't touched nothing." Chambers also told the confidential source, "The heroin is cheap. . . . [T]he heroin is moving." The conversation reasonably indicates that the two individuals that Chambers referenced were more than just buyers—they were "moving everything for [him]."

Chambers' statements also illustrate that, when Chambers stated that the individuals were "moving everything for [him]," the individuals were selling heroin for him. This interpretation is particularly persuasive considered alongside the fact

that one of the individuals, the "white boy," was described by Chambers as "one of [his] . . . people" who was "serving" for him.

The Court concludes that the PSR's statement that Chambers advised the confidential source that he had two individuals selling heroin for him is not an inaccurate reflection of the recorded conversation. Chambers' first objection is overruled.

## II.

Chambers also objects to paragraph 17 of the PSR, which applies a two-level enhancement to his base offense level pursuant to United States Sentencing Guideline § 3B1.1(c). Section 3B1.1(c) provides for a two-level upward adjustment if "the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." Subsection (a) pertains to criminal activity that involved five or more participants or was otherwise extensive. Subsection (b) pertains to instances in which the defendant was a manager or supervisor, but not an organizer or a leader, and the criminal activity involved five or more participants or was otherwise extensive. No party has argued that either subsection (a) or (b) should apply in this case. *See also United States v. Ochoa-Gomez*, 777 F.3d 278, 282 (5th Cir. 2015).

> According to the PSR, this enhancement applies because
>
> [t]he defendant was a distributor of heroin in the Houma, Louisiana, area. He conspired with other unindicted co-conspirators to distribute the heroin and often fronted them heroin to [sell]. During the course of the conspiracy, the defendant admittedly had two individuals selling heroin for him.

3

The PSR states that Chambers' "conduct in the criminal activity is indicative of an organizer, leader, manager, or supervisor," although the PSR does not state which of the four roles Chambers allegedly exercised.

"The Government has the burden to prove, by a preponderance of the evidence, the facts which are necessary to support [an] enhancement." *United States v. Olivares*, 833 F.3d 450, 452 (5th Cir. 2016). As the Fifth Circuit has explained,

> When making factual findings for sentencing purposes, a district court "may consider any information which bears sufficient indicia of reliability to support its probable accuracy." . . . "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." . . . However, "[b]ald, conclusionary statements" . . . are not sufficiently reliable. . . . "If the factual recitation [in the PSR] lacks sufficient indicia of reliability, then it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence." . . . But if the factual recitation in the PSR bears sufficient indicia of reliability, then the "defendant bears the burden of demonstrating that the PSR is inaccurate; in the absence of rebuttal evidence, the sentencing court may properly rely on the PSR and adopt it." . . . Rebuttal evidence must consist of more than a defendant's objection; it requires a demonstration that the information is "materially untrue, inaccurate or unreliable."

*United States v. Zuniga*, 720 F.3d 587, 590–91 (5th Cir. 2013) (citations omitted).

Chambers objects to the PSR's application of the enhancement under § 3B1.1(c) because, once again, he argues that the recording of the August 4, 2017 conversation suggests only that he was selling his drug supply to two individuals. He argues that the recording does *not* demonstrate that he exercised any control or exerted any influence over those individuals, or any other individuals, during the course of the offense. Chambers further argues that there is no indication that he received a greater share of the profits from the two individuals' drug sales or that he fronted

drugs to them and that, without those additional indicia of his role in the offense, the enhancement is inappropriate.

The government contends that, under § 3B1.1(c), an enhancement may be warranted based on the defendant's control over other individuals or, alternatively, based on his management of related assets. The government cites § 3B1.1(c) application note 2, which states:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

As an initial matter, although the commentary refers to an upward *departure*, the Fifth Circuit "has construed Note 2 to allow application of an *adjustment*, even where a defendant did not exercise control over another participant, if he exercised management responsibility over the property, assets, or activities of a criminal organization." *United States v. Ochoa-Gomez*, 777 F.3d 278, 282–83 (5th Cir. 2015) (relying on *United States v. Delgado*, 672 F.3d 320 (5th Cir.) (en banc), *cert. denied*, 568 U.S. 978 (2012)).[1]

---

[1] However, the two judges concurring in *Ochoa-Gomez* cautioned that "[t]he distinction between an adjustment and a departure is not merely semantic." *Ochoa-Gomez*, 777 F.3d at 285 (Prado, J. and Elrod, J., concurring). The concurrence noted that, in *Delgado*, the Fifth Circuit may have in fact committed error by "conflat[ing] an 'adjustment' and an 'upward departure'" when interpreting application note 2. *Id.* at 284. It also noted that *Delgado* and its progeny "place[ ] this circuit at odds with several other circuits." *Id.* at 285.

The critical inquiry is whether the government has proven by a preponderance of the evidence that Chambers' role in the subject offense was one of the four roles enumerated in § 3B1.1(c) or, alternatively, that Chambers managed responsibility over the property, assets, or activities of a criminal organization. Relying exclusively on the August 4, 2017 conversation, the government argues both.

The Court will first address whether the government has proven that Chambers was an organizer, leader, manager, or supervisor as contemplated by § 3B1.1(c). For § 3B1.1(c) to apply under this theory, Chambers "must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime." *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir. 1990). The Fifth Circuit has instructed district courts analyzing the applicability of § 3B1.1 to consider the defendant's exercise of decision-making authority, the nature of his participation in the offense, his recruitment of participants in the offense, whether he claimed a right to a larger share of the profits, his degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control or authority he exercised over others. *United States v. Liu*, 960 F.2d 449, 456 (5th Cir. 1992) (citing commentary to U.S.S.G. § 3B1.1(b) that provides guidance on how to distinguish between a leadership or organizational role and "mere management or supervision"); *see also United States v. McLaughlin*, 739 F. App'x 270, 277–78 (5th Cir. 2018).

The Court finds that the government has not met its burden of proving that Chambers exercised a role as either an organizer, leader, manager, or supervisor in any criminal activity. Chambers' statements to the confidential source, without more, are insufficient. Although the conversation indicates that two individuals were reselling drugs on Chambers' behalf, it says nothing about the extent, method, or manner of Chambers' control over those individuals or their transactions.

"When the evidence demonstrates that a defendant directed another in his drug trafficking activities," the court may conclude that the defendant was, at a minimum, a manager or a supervisor, and "sentence enhancement under § 3B1.1(c) is appropriate." *United States v. Turner*, 319 F.3d 716, 725 (5th Cir. 2003). However, the government has failed to provide sufficient reliable proof that Chambers directed anyone. There is no evidence, for example, that Chambers instructed or commanded the two individuals as to what quantities of heroin to sell, the price to sell it at, when to sell it, or who to sell it to. Similarly, there is no evidence that Chambers recruited the two individuals or took a greater share of any of their profits. The evidence simply does not establish that Chambers exercised any of the roles enumerated in § 3B1.1(c). *See United States v. Cisneros*, 414 F. App'x 696, 703 (5th Cir. 2011).

As the Court already explained, the enhancement may also apply if Chambers was proven to have managed the assets, property, or activities of a criminal organization. *See Ochoa-Gomez*, 777 F.3d at 282–83. For example, the Fifth Circuit has upheld the application of an upward adjustment pursuant to § 3B1.1(c) where a defendant contributed to the drug supply for an operation in which drugs were

7

transported from Mexico to the United States. *Ochoa-Gomez*, 777 F.3d at 280, 284. In *Ochoa-Gomez*, in addition to contributing a portion of the drugs, the evidence showed that the defendant assisted in negotiations, stored and packaged the drugs, delivered them to an undercover officer, and indicated his willingness to supply more drugs in the future. *Id.* at 284.

The recorded conversation between Chambers and the confidential source indicates that Chambers sold heroin to two individuals, who then resold it for him. But this fact alone is insufficient for the government to meet its burden of proving that Chambers' handling of the heroin rose to the level of "exercis[ing] management responsibility over the property, assets, or activities of a criminal organization." *Id.* Chambers' objection to the enhancement under § 3B1.1(c) is, therefore, sustained.

## III.

Based on the Court's resolution of the objections, Chambers' total offense level is 23. His criminal history category is III, which, in conjunction with his total offense level, yields a sentencing guideline range of 51 to 71 months.

New Orleans, Louisiana, January 10, 2019.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**