UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | No. 18-47 |
| ROLAND CHAMBERS | SECTION I |

### ORDER & REASONS

Before the Court is defendant Roland Chambers' ("Chambers") motion[1] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(a). The government opposes the motion.[2] For the following reasons, the motion is denied.

### I.

On January 10, 2019, Chambers pled guilty to count one of a superseding bill of information,[3] which charged him with conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin in violation of 21 U.S.C. § 846.[4] This Court sentenced Chambers to a term of imprisonment of 115 months, and a four-year term of supervised release.[5] The sentence imposed was an upward variance from the United States Sentencing Guidelines range based on the Court's consideration of the factors

---

[1] R. Doc. No. 81.
[2] R. Doc. No. 84.
[3] R. Doc. No. 61.
[4] *Id.* at 1.
[5] *Id.* at 3.

1

set forth in 18 U.S.C. § 3553(a).[6] Chambers' projected release date is October 29, 2025.[7]

Chambers filed a notice of appeal of the final judgment, conviction, and sentence to the United States Fifth Circuit Court of Appeals on January 14, 2019,[8] and the government moved to dismiss the appeal pursuant to the appellate waiver in Chambers' plea agreement.[9] The Fifth Circuit granted the government's motion, and his appeal was dismissed.[10] Chambers' petition for a writ of certiorari was also denied by the United States Supreme Court.[11]

Chambers now requests compassionate release pursuant to the First Step Act.[12] Chambers argues, pro se, that his medical conditions, age, and race, as well as the alleged failure of the Bureau of Prisons ("BOP") to address "the identified outbreak" at FCI Oakdale I, where defendant is currently serving his sentence, constitute extraordinary and compelling reasons for a sentence reduction.[13]

Specifically, Chambers alleges that he suffers from Bell's Palsy, methicillin-resistant Staphylococcus aureus (MRSA), and hypertension, and consequently falls within a group recognized as "high risk" of severe illness by the Centers for Disease

---

[6] *See* R. Doc. No. 62, at 1; R. Doc. No. 84, at 23. Chambers' sentencing guidelines range was 51 to 71 months.
[7] R. Doc. No. 84, at 2.
[8] R. Doc. No. 63.
[9] R. Doc. No. 80-1, at 3.
[10] R. Doc. No. 80.
[11] *Chambers v. United States*, No. 19-8572, 2020 WL 3492750, at *1 (U.S. June 29, 2020).
[12] R. Doc. No. 81, at 6.
[13] *See* R. Doc. No. 84, at 2.

Control (CDC) if he contracts COVID-19.[14] Chambers also asserts that his age—fifty-one years old—and race—African American—place him in categories of heightened risk.[15]

Chambers further claims that he is at greater risk of COVID-19 infection and death because of the conditions at the Oakdale facility where he is held.[16] Chambers asserts that the former warden resigned amidst alleged mismanagement related to the spread of COVID-19 within the facility[17] and that, as of the date on which he filed his request for compassionate release, eight prisoners had died from the virus and that seventeen staff members and "more than 100 inmates" had tested positive for it, some of whom Chambers states lived in his housing unit.[18]

In support of his request for compassionate release, Chambers includes a letter addressed to him from the facility warden alerting him that "it has been determined that you fall into" a "high risk concern" category for COVID-19 identified by the CDC.[19] The letter encourages Chambers "to continue to practice infection control measures."[20] Chambers claims that while incarcerated, "it is impossible" for him to

---

[14] *Id.* at 2.
[15] *See id.* at 3 ("It is now known that older people like Defendant are at the highest risk of serious illness or death if exposed to COVID-19. . . . Race data collected in the United States is revealing that African Americans are more susceptible to death from the disease.").
[16] *Id.*
[17] R. Doc. No. 81, at 5.
[18] *Id.* at 2–3, 5. Chambers states that the American Civil Liberties Union is pursuing legal action on behalf of the Oakdale prisoners because of these conditions.
[19] R. Doc. No. 81-1, at 5.
[20] *Id.*

3

follow CDC recommendations to prevent exposure to COVID-19.[21] Chambers additionally provides a copy of an inmate request form, dated May 11, 2020, in which he asks for early release because of his "medical conditions,"[22] as well as a letter dated June 10, 2020, from the acting warden at the Oakdale complex,[23] denying that request.[24] In light of these alleged circumstances, Chambers asks that the Court reduce his sentence to time served or, alternatively, to home confinement to serve the remainder of his sentence.[25]

---

[21] R. Doc. No. 81, at 5.
[22] R. Doc. No. 81-1, at 2 (listing "high blood pressure" and "prone to strokes").
[23] FCI Oakdale I is one of two BOP facilities within the Oakdale Federal Correctional Complex. *See FCI Oakdale I*, https://www.bop.gov/locations/institutions/oak/ (last accessed July 22, 2020).
[24] R. Doc. No. 81-1, at 1.
[25] R. Doc. No. 81, at 2, 6. However, Chambers acknowledges in his own motion that the Court cannot grant home confinement:

> As many district courts have found, the language of [the home confinement statute] authorizes the Attorney General, through the BOP, to modify the method of imprisonment under the statute. . . . It does not permit the courts to do so. Likewise, the authority to make determination to lengthen the maximum amount of time for home confinement under the CARES ACT is squarely allocated to the Attorney General, whose authority is the BOP. Hence, if Defendant wishes to continue to pursue this method of release, he must do so through the procedures set up through the BOP.

*Id.* at 2; *see also United States. v. Crinel*, No. CR 15-61, 2020 WL 3884521, at *7–*8 (E.D. La. July 9, 2020) (Morgan, J.) (explaining that a "challenge to an administrative decision of BOP pursuant to 28 U.S.C. § 2241 must be filed in the district where [defendant] is incarcerated"). FCI Oakdale, where Chambers is incarcerated, sits in the Western, not Eastern, District of Louisiana and, therefore, is outside the Court's jurisdiction. Accordingly, Chambers' alternative argument that this Court should order that he be released to home confinement fails. Notwithstanding this, the government asserts that Chambers was considered, but deemed ineligible for, home confinement because he "has only served approximately 35% of his sentence" and his risk of recidivism was "low," "rather than minimum." R. Doc. No. 84, at 8–9.

The government opposes Chambers' motion and argues that it should be denied because Chambers' medical conditions are not an "extraordinary and compelling" reason that warrants his release.[26]  The government describes BOP's general response to COVID-19 and outlines the various precautions being taken to safeguard inmates nationwide.[27]  More specific to FCI Oakdale I, the government reports numbers of COVID-19 infections and deaths at the facility that are lower than those Chambers reported.[28]  The government confirms that Chambers sought compassionate release through BOP administrative processes.[29]  However, the government quotes the warden's denial letter which stated that Chambers "do[es] not suffer from a chronic or serious medical condition related to the aging process and the Bureau of Prisons (BOP) can provide conventional treatment to improve [his] condition."[30]  The government also observes that Chambers' record "demonstrates a pattern of crimes involving narcotics, assault, and weapons, as well as a history of repeated non-compliance with supervision."[31]

## II.

---

[26] R. Doc. No. 84, at 1.
[27] *Id.* at 2–6.
[28] *See id.* at 6 (noting on July 13, 2020 that "[a]t Oakdale I, BOP reports that there are five confirmed active cases of COVID-19 among inmates and BOP reports that five staff members have active confirmed positive test results for COVID-19.  There have been seven inmate deaths and no staff deaths at Oakdale I."). As of July 23, 2020 at FCI Oakdale I, seven inmates and seven staff members have tested positive for COVID-19, and 206 inmates and eighteen staff members have recovered. Seven inmates have died from it.  *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited July 23, 2020).
[29] *Id.* at 9.
[30] *Id.* at 9 & 9 n.1.
[31] *Id.* at 1.

Under 18 U.S.C. § 3582, as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may modify a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Upon the filing of such a motion, a court may reduce a defendant's sentence after considering, to the extent applicable, the factors set forth in § 3553(a). *Id.* A defendant's sentence may only be reduced if the court finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*; § 3582(c)(1)(A)(i).

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), Chambers must both satisfy the exhaustion requirement and demonstrate that "extraordinary and compelling reasons" warrant a reduction of his sentence after consideration of the factors set forth in § 3553(a) and the applicable policy statements by the United States Sentencing Commission.

### III.

As the government agrees that Chambers satisfied the exhaustion requirement,[32] the Court will address only whether a reduction in Chambers' sentence is warranted.

---

[32] R. Doc. No. 84, at 9.

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction of Chambers' sentence. *See United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019).[33]

The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Chambers claims to suffer hypertension, Bell's Palsy, and MRSA.[34] Chambers' medical records reflect that he is receiving treatment for hypertension from BOP and

---

[33] Because the Sentencing Commission has not amended the applicable policy statement in light of the statutory changes to 18 U.S.C. § 3582, several other courts have concluded that there are no policy statements applicable to motions for compassionate release by defendants under the First Step Act, and a court may consider whether there are any extraordinary and compelling reasons other than those delineated in the Sentencing Commission's pertinent policy statement that warrant granting relief. *See United States v. Cantu*, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019); *Beck*, 425 F. Supp. 3d at 579; *see also United States v. Haynes*, No. 93-1043, 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases).

[34] R. Doc. No. 81. Chambers claimed to suffer strokes in his administrative request for release, R. Doc. No 85-1, at 2, but did not include strokes in his request to the Court. *See* R. Doc. No. 81 at 2 (listing only hypertension, Bell's Palsy, and MRSA).

has been prescribed amlodipine and hydrochlorothiazide.[35] However, Chambers does not provide any support for the latter two conditions, and the government reports no record of their manifesting while Chambers has been in BOP custody.[36] Even taking these medical conditions, *arguendo*, to be ones that Chambers in fact suffers, they would not rise to the level of terminal illness or substantially diminish Chambers' ability to provide self-care from within Oakdale I. There is no evidence that Bell's Palsy or MRSA causes an individual to be immunocompromised or that either otherwise increases the risk of COVID-19 infection.[37] Moreover, Chambers' ongoing receipt of medical care for his hypertension evidences that he is able to care for his high blood pressure within prison. *See United States v. Mazur*, No. CR 18-68, 2020 WL 2113613, at *3 (E.D. La. May 4, 2020) (Africk, J.) ("Courts have also taken into account the quality of healthcare provided to the defendant while incarcerated and whether granting the defendant compassionate release would have far-reaching implications, i.e. whether a large number of incarcerated defendants could be granted

---

As Chambers did not claim that he suffers from strokes, the Court will not consider the appropriateness of compassionate release on that ground.

[35] R. Doc. No. 84-1, at 3.

[36] *See* R. Doc. No. 84, at 15 & 15 n.22 (noting that defendant reported a 2018 diagnosis of Bell's Palsy to BOP); *id.* at 16 & 16 n.25 (noting that MRSA is present in Chambers' medical records only in the context of a hospitalization in 2000 for an Achilles tendon repair procedure and not since).

[37] *See People with Certain Medical Conditions*, Coronavirus Disease 2019 (COVID-19), CDC (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (listing the underlying medical conditions that present an increased risk for severe illness from COVID-19 and not mentioning Bell's Palsy or MRSA).

early release on the same grounds. . . . Notably absent from Mazur's motion is any assertion that the BOP is not providing him with adequate care.").

Moreover, courts have found that hypertension does not amount to an extraordinary or compelling reason for release. *See United States v. Takewell*, No. 14-36, 2020 WL 4043060, at *5 (W.D. La. July 17, 2020) (denying compassionate release for a defendant suffering hypertension and obesity); *United States v. Guyton*, No. 11-271, 2020 WL 2128579, at *3 (E.D. La. May 5, 2020) (Milazzo, J.) (denying compassionate release for a 45-year-old with mild hypertension); *United States v. Alexander*, No. 14-126, 2020 WL 2468773, at *5 (M.D. La. May 13, 2020) (denying compassionate release because, among other reasons, high blood pressure was not by itself sufficiently extraordinary); *United States v. Adams*, No. 16-86, 2020 WL 3026458, at *1 (D. Conn. June 4, 2020) (denying compassionate release for a 59-year-old with high blood pressure); *United States v. Roberts*, Crim. Action No. 15-00135, 2020 WL 2130999, at *3 (W.D. La. May 5, 2020) (stating that the defendant's "proffered reason of hypertension fails to meet the standard for compassionate release"). Therefore, Chambers' reported medical conditions do not provide grounds for compassionate release.[38]

---

[38] The government also notes that Chambers' BOP medical records report that Chambers' body mass index is greater than 40, a score indicative of obesity. R. Doc. No. 84 at 17 n.28. Obesity is an "underlying medical condition" that poses "increased risk for severe illness from COVID-19." *People with Certain Medical Conditions*, Coronavirus Disease 2019 (COVID-19), CDC (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity.

Chambers' age and race similarly do not amount to extraordinary or compelling reasons.[39] *See United States v. Winn*, No. CR H-18-691-8, 2020 WL 3077854, at *2 (S.D. Tex. June 10, 2020) (denying compassionate release of a thirty-one year-old African American man who alleged that he was at increased risk of contracting COVID-19 because of his race but who failed to provide support for his concern); *United States v. Brown*, No. CR 13-243, 2020 WL 2542899, at *3 (E.D. La. May 19, 2020) (Vance, J.) (denying compassionate release of a fifty-year-old woman who claimed she was at increased risk of contracting COVID-19 "based on her age, race, and gender" because"[e]ven if these individual characteristics were to make her

---

However, Chambers does not allege that he suffers obesity in his motion to the Court, and even if he had, the Court agrees with the government, *see* R. Doc. No. 84 at 17 n. 28, that it would not justify compassionate release because he does not assert that he is unable to provide self-care from prison. *See United States v. Abbey*, 2020 WL 2468767 (C.D. Ill. May 13, 2020) (denying compassionate release of an inmate who suffers obesity).

[39] *See Older Adults*, Coronavirus Disease 2019 (COVID-19), CDC (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (explaining that "people in their 50s are at higher risk for severe illness than people in their 40s" and "people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older."); s*ee also CDC updates, expands list of people at risk of severe COVID-19 illness*, Press Release, CDC (June 25, 2020), https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html (noting that "CDC has removed the specific age threshold from the older adult classification" and instead "now warns that among adults, risk increases steadily as you age, and it's not just those over the age of 65 who are at increased risk for severe illness."); *COVID-19 in Racial and Ethnic Minority Groups*, Coronavirus Disease 2019 (COVID-19), CDC (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html ("Long-standing systemic health and social inequities have put some members of racial and ethnic minority groups at increased risk of getting COVID-19 or experiencing severe illness, regardless of age. Among some racial and ethnic minority groups, including non-Hispanic black persons . . . evidence points to higher rates of hospitalization or death from COVID-19 than among non-Hispanic white persons.").

more likely to contract COVID-19, these factors do not correspond to the types of extraordinary reasons this Court must consider before granting compassionate release"). Taken together, Chambers' alleged individual risk factors do not constitute extraordinary or compelling reason warranting a sentence reduction.

Chambers' concerns regarding COVID-19 also do not warrant a reduction of his sentence. BOP is undertaking measures to curb the spread of COVID-19 and to limit inmates' risk of contracting it.[40] Chambers has alleged only general concerns that the management of FCI Oakdale I and the fact of being in a carceral setting raise the risk of COVID-19 infection.[41] Numerous courts have concluded that such broad allegations do not warrant a sentence reduction under § 3582. *See United States v. Clark*, No. 17-85, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the

---

[40] *See* R. Doc. No. 84, at 2–6.
[41] *See* R. Doc. No. 81, at 5.

11

Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); *United States v. Emmons*, No. 16-98, 2020 WL 3086606, at *2 (S.D. Miss. June 10, 2020) ("Were such concerns sufficient, every federal prisoner would be entitled to a sentence reduction under § 3582(c)(1)(A).").

While the Court is alert to the risks of COVID-19 infection in correctional facilities, Chambers has also not demonstrated that BOP's response to the COVID-19 pandemic and the protocols it has implemented to curtail the spread of the virus are inadequate.[42] Moreover, the existence of COVID-19 at FCI Oakdale I alone cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

## IV.

Even if the Court were to find that Chambers' circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances

---

[42] As the government advised, BOP has implemented revised preventative measures for all institutions, including quarantine and isolation procedures, to require that all newly-admitted inmates be assessed using a screening tool and temperature check. R. Doc. No. 81, at 2–6; *see BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 22, 2020). Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff, and symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id.*

of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

Chambers' criminal history includes multiple federal drug-trafficking offenses, possession of a firearm while under indictment on a state felony drug charge, and multiple state convictions for domestic assault, during two of which he possessed a knife.[43]  In the factual basis for the plea agreement, pursuant to which Chambers is now incarcerated, he agreed that he was responsible for distributing more than 100 grams of heroin during the timeframe of the conspiracy.[44]  The nature and circumstances of the instant offense combined with Chambers' history of violent behavior demonstrate that he would be a danger to the community if released.[45]  *Cf. Perdigao*, 2020 WL 1672322, at *4 (finding that the defendant was not a danger to the community, because although he pled guilty to a number of serious crimes, none were crimes of violence or offenses involving controlled substances).

## V.

After reviewing the § 3553(a) factors and considering the applicable policy statement by the Sentencing Commission, the Court does not find that there are compelling or extraordinary reasons warranting a reduction of Chambers' sentence.

Accordingly,

---

[43] R. Doc. No. 44, at 10 ¶ 36, 11 ¶ 39, 12 ¶ 40, 13 ¶¶ 45–46; *see also* R. Doc. No. 71, at 9.
[44] R. Doc. No. 84, at 7; R. Doc. No. 28, at 4; R. Doc. No. 72, at 55.
[45] *See* R. Doc. No. 71, at 9.  Chambers was under supervised release when arrested for the crime for which he now serves his sentence.

**IT IS ORDERED** that Chambers' motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

**IT IS FURTHER ORDERED** that Chambers' request for an early release to home confinement is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, July 24, 2020.

                                                **LANCE M. AFRICK**
                                       **UNITED STATES DISTRICT JUDGE**